IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS SHERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 5525 |
| v. | ) |
| | ) Judge John Z. Lee |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Thomas W. Sherry, a current Chicago police officer, has sued the City of Chicago ("the City") under 42 U.S.C. § 1983, alleging that the City violated his Fifth and Fourteenth Amendment rights when it placed him on restricted duty status in 2009. The parties have filed cross-motions for summary judgment. For the following reasons, Sherry's motion is denied, and the City's motion is granted.

### I. Background

**A. Facts**[1]

Sherry joined the Chicago Police Department ("CPD") as a police officer in 1997. Pl.'s L.R. 56.1 Stmt. Material Facts ("PSOF") ¶ 3, ECF No. 81. In 2002, he was assigned to CPD's "Special Operations Section" ("SOS"), a city-wide unit focused on investigating narcotic and gun-related crimes. Def.'s L.R. 56.1 Stmt. Material Facts ("DSOF"), ¶¶ 3, 27, ECF No. 84. Three years later, in 2005, CPD began "Operation Broken Oath," an investigation into allegations that numerous

---

[1] The following facts are undisputed or deemed admitted, unless otherwise noted.

SOS officers had engaged in misconduct, including false police reports, home invasions, and theft. *Id.* ¶ 28. As a result of that investigation, on August 15, 2006, Sherry was relieved of his police powers, placed on restricted status, and assigned to a desk job in the Alternate Response Unit ("ARU"). *Id.* ¶¶ 4, 5, 11.

In September 2006, the SOS scandal broke, and numerous officers, including Sherry, were arrested and indicted with serious felonies. PSOF ¶ 6; DSOF ¶ 31. The Cook County State's Attorney's Office then dropped all criminal charges against Sherry and entered a *nolle prosequi* order on February 11, 2009. PSOF ¶ 8; DSOF ¶ 8.

While Sherry's criminal charges were pending, under the terms of his release on bond, he was not able to perform the essential duties of his job as a CPD officer. DSOF ¶ 7. As a result, Sherry took an unpaid leave of absence from CPD from November 2006 to March 2009. PSOF ¶ 7; DSOF ¶ 8.

After the criminal charges against him were dropped, Sherry returned to work in the ARU at his full salary; however, he remained stripped of his police powers and forbidden from carrying a gun on duty. PSOF ¶ 9; DSOF ¶¶ 8–10. In fact, in the decade-plus since Sherry returned to work, the CPD has never restored Sherry's full police powers, and Sherry has remained on desk duty with the ARU.[2] PSOF ¶¶ 9–10; DSOF ¶ 5.

---

[2] The City has moved to supplement the record on summary judgment with the fact that it has now suspended Sherry without pay pending the resolution of charges that seek Sherry's discharge, which were filed with the Police Board. *See* Def.'s Mot. Supplement Record on Summ. J., ECF No. 100. Sherry has opposed this motion. *Id.* Because these facts are immaterial to the Court's decision, the City's motion is denied as moot.

2

## B.    Procedural History

Sherry initiated this lawsuit in August 2018, asserting that the City deprived him of a protected property interest without due process of law in violation of his Fifth and Fourteenth Amendment rights by placing him on restricted duty status seemingly indefinitely without conducting an investigation or giving Sherry an opportunity to be heard. *See* Compl., ECF No. 1; Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Opening Br.") at 1–2, ECF No. 80. Two months later, in October of 2018, CPD's Bureau of Internal Affairs served Sherry with a notification of charges of misconduct—the first time since 2006 that the City had informed him about any investigation into his time assigned to the SOS. *See* PSOF ¶¶ 16–17.

The City moved to dismiss Sherry's complaint on statute of limitations grounds, but Sherry invoked the "continuing violation doctrine" to argue that his claims are timely. *See Sherry v. City of Chi.*, No. 18 C 5525, 2019 WL 2525887, at *3 (N.D. Ill. June 19, 2019). The Court dismissed Sherry's claims stemming from his suspension without pay from 2006 to 2009 as time-barred. *Id.* But as to his current placement on restricted duty status, the Court held that, "accepting the allegations in the complaint as true and drawing all inferences in Sherry's favor, the facts of this case are sufficient to satisfy the continuing-violation doctrine" because, according to the complaint, "it appears that the City could have instituted disciplinary proceedings at any time during the past eight years (and repeatedly informed Sherry of its right to do so)." *Id.* The Court permitted Sherry's Fifth and

3

Fourteenth Amendment claim to proceed because, at the pleading stage, "Sherry's delay in filing the complaint" did not seem "entirely unreasonable." *Id.*

Now, each party has moved for summary judgment in its favor. *See* Pl.'s Mot. Summ. J., ECF No. 79; Def.'s Mot. Summ. J., ECF No. 83.

## II.  Legal Standard

Summary judgment is appropriate where the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forth with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019). To satisfy that ultimate burden, the nonmoving party must establish "that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Where, as here, the parties have filed cross-motions, the court "look[s] to the burden of proof that each party would bear on an issue as trial." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

4

### III. Analysis

**A. Nature of Sherry's Interest**

When evaluating a due process claim like Sherry's, a court asks "(1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Simpson v. Brown Cty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). "For an interest to be constitutionally protected, a plaintiff must have 'a legitimate claim of entitlement to it' rather than 'a unilateral expectation of it.'" *Makhsous v. Daye*, 980 F.3d 1181, 1183 (7th Cir. 2020) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

"A protected property interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract." *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004) (cleaned up). "In the employment context, a plaintiff generally is required to show that the terms of his employment provide for termination only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (citation omitted). "[T]he [protected] interest must itself be substantive rather than procedural in nature." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018). A plaintiff bears the burden of establishing a protected property interest. *Crull*, 384 F.3d at 460.

Here, Sherry asserts that the Collective Bargaining Agreement ("CBA") between the City and the Fraternal Order of Police (the union to which Sherry belongs) provides the contractual source of his protected property interest. *See*

Pl.'s Combined Mem. Opp'n Def.'s Mot. Summ J. and Supp. Pl.'s Mot. Summ J. ("Pl.'s Combined Resp.") at 2; DSOF ¶ 20. In particular, Sherry directs the Court to § 8.1 of the CBA, which provides: "No Officer covered by this Agreement shall be suspended, relieved from duty or otherwise disciplined in any manner without just cause."[3] DSOF ¶ 22. Sherry also points to Department General Order 93-03 ("G.O. 93-03"), which provides:

> [Officers'] failure [to comply with CPD rules, regulations, directives, and orders] will be considered just cause for disciplinary action . . . . At the same time, [CPD officers] must be protected against false allegations of misconduct . . . . **Prompt, thorough investigations will be conducted into allegations of misconduct to establish facts which can absolve the innocent and identify the guilty.**

Pl.'s Ex. 2, G.O. 93-03 at 1, ECF No. 81-2 (emphasis added). Sherry argues that his placement on restricted duty status was a disciplinary action, which the City took without conducting a prompt, thorough investigation.[4]

---

[3] Although three different CBAs covered the relevant period in this case, they all contain this provision verbatim. See Def.'s Ex. 7, 2003–07 CBA at 10, ECF No. 84-8; Def.'s Ex. 8, 2007–12 CBA at 8, ECF No. 84-9; Def.'s Ex. 9, Current CBA at 8, ECF No. 84-10.

[4] Sherry also gestures toward a property interest in overtime, promotional opportunities, the ability to work secondary employment, and the chance to seek law enforcement positions with other departments, which he claims are not available to him as a police officer on restricted duty status. See Pl.'s Combined Resp. at 8. Sherry argues that he suffered an economic loss when he was deprived of these opportunities, and as such, the constitution protects his interest in them. *Id.* However, while it is true that a "'[p]urely dignitary or otherwise nonpecuniary dimension[] of employment [is] *not* [a] property interest[] protected by the due process clause of the Fourteenth Amendment," that does not make the converse true. See *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 530 (7th Cir. 2000) (emphasis added). In other words, a protected property interest must involve a pecuniary loss, but not all pecuniary losses evince a protected property interest. Because Sherry has not pointed the Court to a source that "support[s] [his] claim[] of entitlement to those benefits," Sherry has failed to establish a property right to overtime, promotional

6

The City counters that the removal of Sherry's police powers was not discipline because the governing CBAs in 2006—when Sherry's police powers were originally removed—and in 2009—when Sherry was reinstated on restricted duty status—did not place any explicit limits on the City's ability to remove officers' police powers. Those CBAs contrast with the current CBA (which became effective in 2012), which is the first to require CPD to give an officer "written notification of the allegations or events that have caused the Officer to be relieved of police powers." DSOF ¶ 23. According to the City, the change implies that officers previously did not have any property interest in their police powers. The City also points to a provision in all three relevant CBAs stating that CPD "retain[s] the right to operate and manage its affairs in every respect," including the "sole discretion" to "hire, examine, classify, select, promote, restore to career service positions, train, transfer, assign and schedule Officers." DSOF ¶ 21. Thus, the City asserts, its discretion to reassign Sherry to the ARU and remove his police powers was not limited by contract, and Sherry's interest in his police powers is not protected by the constitution.

Neither party cites any legal precedent to illuminate whether Sherry's reassignment or the removal of his police officers constituted "discipline" within the meaning of § 8.1 of the CBA. Nevertheless, the Court need not resolve that issue, because the City correctly argues that Sherry's claim is time-barred.

---

opportunities, the ability to work secondary employment, and the chance to seek law enforcement positions with other departments. *See Crull*, 384 F.3d at 460.

7

B.   **Timeliness of Sherry's Suit**

Sherry's § 1983 claim is governed by Illinois' two-year statute of limitations for personal injury claims. *See Sherry*, 2019 WL 2525887, at *2 (citing *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993)). By contrast, as this Court previously noted, federal law determines the date that Sherry's cause of action accrued, and, in general, a § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* (quoting *Kelly*, 4 F.3d at 511).

As he did at the motion to dismiss stage, Sherry invokes the continuing violation doctrine, which is an equitable doctrine that tolls the statute of limitations "until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008). But, crucially, the "continuing violation doctrine will apply to a series of acts 'only if their [unlawful] character was not apparent when they were committed but became so when viewed in the light of the later acts.'" *McDonough v. City of Chi.*, 743 F. Supp. 2d 961, 970 (N.D. Ill. 2010) (quoting *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir.1993)). A plaintiff "may not sit back and accumulate all the [unlawful] acts and sue on all within the statutory period applicable to the last one" where "he knows or with the exercise of reasonable diligence would have known after each act that it was [unlawful] and had harmed him." *Moskowitz*, 5 F.3d at 282.

8

The quintessential application of the continuing violation doctrine is in the workplace harassment context. *Limestone*, 520 F.3d at 801. As the Seventh Circuit has explained, "[t]he first instance of a coworker's offensive words or actions may be *too trivial to count as actionable harassment*, but if they continue they may eventually reach that level and then the entire series is actionable." *Id.* (emphasis added). Furthermore, "[i]f each harassing act had to be considered in isolation, there would be no claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered actionable harassment." *Id.*

In its prior opinion, the Court noted that "Sherry's delay in filing the complaint was not entirely unreasonable, and the City has not established that the statute of limitations warrants dismissal of this claim, *at least at the pleading stage*." *Sherry*, 2019 WL 2525887, at *3 (emphasis added).[5] That is because "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Now, however, at the summary judgment stage, "the burden is on the plaintiff[] to present facts which, if true, would justify equitable modification of the statute of limitations." *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 606 (7th Cir. 1992) (cleaned up). Thus, Sherry "must affirmatively demonstrate, by setting forth specific facts, that there is a genuine issue of material fact" that would support the application of the continuing

---

[5] As such, Sherry is mistaken in asserting that the Court previously determined as a matter of law that the continuing violation tolled the statute of limitations in this case. *See* Pl.'s Combined Resp. at 8–9.

9

violation doctrine. *See id.* (citing Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 324). Specifically, because Sherry filed suit on August 13, 2018, and his § 1983 claims have a two-year statute of limitations, Sherry must demonstrate that a "reasonable person" in his shoes would not have realized that he had "a substantial claim" until some point *after* August 13, 2016. *See Limestone*, 520 F.3d at 801.

Plaintiff's articulation of his asserted property right is less than clear, and so it is less than clear when the alleged deprivation of that right would have "blossom[ed] into an injury" that a reasonable person would have appreciated. *See Limestone*, 520 F.3d at 801. For example, in Plaintiff's opening brief, he claims a right to a *pre-deprivation* hearing. But in Plaintiff's response, he changes tack and claims that G.O. 90-93 helps define his property interest, conferring a right to a prompt, thorough investigation by the City *after* Sherry's police powers were removed and he was transferred to the ARU. *See* Pl.'s Combined Resp. at 2 ("Section 8.1 of the collective bargaining agreement . . ., along with Department General Order ("G.O.") 93-03, creates and defines [Sherry's] rights."); *id.* at 4 ("Plaintiff posits that if the City had conducted an investigation into his allegations within a reasonable amount of time, he would not have a claim.").

Nonetheless, Sherry insists that *nothing changed* from 2009 until 2017, which is the earliest point in time that Sherry accepts that the City may have *begun* its investigation into his alleged misconduct. *Id.* at 5. This is a problem for Sherry, because he admits that his police powers were first revoked in 2006, just prior to his arrest, when he was initially transferred to the ARU. *See* Pl.'s Resp.

10

Def.'s L.R. 56.1 Stmt. Material Facts at 1, ECF No. 91. And he acknowledges that "the August 15, 2006 relief of powers order *remained in effect*" when he returned to CPD in 2009. *Id.* at 2 (emphasis added).

Thus, assuming *arguendo* that the City had disciplined Sherry when it removed his police powers, to the extent that Sherry's argument is that those actions were unlawful in and of themselves, that was readily apparent at the time. Alternatively, to the extent that Sherry's claim is premised on the purported failure of the City to institute a prompt and thorough investigation into the allegations against him in 2006, having now had the opportunity to conduct discovery in this case, Sherry does not point to any facts demonstrating why it was not clear to him prior to August 13, 2016, that the City's failure to do so was unlawful. As such, this is not a situation akin to workplace harassment where the City's previously-lawful course of conduct became more and more egregious until it ultimately became unconstitutional at some point after August 2016. And, indeed, even if there were some sort of grace period that started running in March of 2009 (during which the City could have initiated its prompt, thorough investigation), Sherry still bears the burden to raise some evidence from which a jury could find that a reasonable person in his shoes would have realized that he had a claim only after August 2016. He has not met that burden here.

At the pleading stage, Sherry was able to rely upon his allegations and the continuing violation doctrine to survive the City's motion to dismiss his claim based upon the two-year statute of limitations. But now, after discovery, Sherry

11

must do more to forestall summary judgment. Because he has not met his burden to show some evidence that a reasonable person in his circumstances would not have realized that the City's course of conduct amounted to a constitutional violation prior to August 13, 2016, Sherry cannot rely on the continuing violation doctrine to toll the statute of limitations, and his claims are time-barred.

## CONCLUSION

For the above-stated reasons, Sherry's motion for summary judgment is denied, and the City's motion is granted. Final judgment will be entered accordingly in favor of the City. This case is hereby terminated.

IT IS SO ORDERED.                    ENTERED: 3/23/21

_____
**JOHN Z. LEE**
**United States District Judge**